873 F.2d 408
 277 U.S.App.D.C. 195
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Garnett JACKSON, Appellant,
v.
Babalola COLE, Appellee.
 No. 87-7217.
 United States Court of Appeals, District of Columbia Circuit.
 May 8, 1989.
 
 Before WALD, Chief Judge, and HARRY T. EDWARDS and D.H. GINSBURG, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on the record on appeal from the United States District Court for the District of Columbia and was briefed by the parties and argued orally by counsel. The issues have been accorded full consideration by the court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the order of the district court granting directed verdict for defendant be reversed and that the cause be remanded to the district court for further proceedings consistent with the accompanying memorandum.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 Plaintiff Garnett Jackson appeals from the district court's grant of a directed verdict for defendant Babalola Cole in this personal injury action arising from Cole in connection with an automobile accident that occurred on November 15, 1983. We reverse and remand for further proceedings.
 
 
 5
 * At the time of the accident, there was in effect in the District of Columbia a no-fault insurance law providing that a person claiming insurance benefits under the law could not also maintain a personal injury action against any person unless "the victim suffered an injury directly resulting in substantial and medically demonstrable permanent impairment which has significantly affected the ability of the victim to perform his or her professional activities or usual and customary daily activities...." D.C.Code Sec. 35-2105(b)(4), now codified at D.C.Code Sec. 35-2105(b)(1) (Michie 1988).
 
 
 6
 At the close of plaintiff's evidence, Cole moved for a directed verdict. The court granted the motion, finding that
 
 
 7
 the medical testimony ... was insufficient, as a matter of law, to establish that the Plaintiff, as a consequence of the automobile accident of November 15, 1983 sustained an injury directly resulting in ... substantial and medically demonstrable permanent impairment which significantly affected her ability to perform her professional activities....
 
 
 8
 JA 42 (emphasis in original). The ground on which the district court granted the motion for directed verdict is not entirely clear from the foregoing passage; it merely repeats the statutory language and underlines two words of it. We think it more likely than not, however--on the basis of the district court's focus on the "medical testimony" and its underlining the words "medically demonstrable"--that the court relied on the lack of evidence that the first accident caused the injuries about which plaintiff's physician Dr. Goltz testified; the court may or may not have also concluded that plaintiff presented insufficient evidence that her injuries, assuming they were caused by the accident, significantly affected her ability to perform her professional activities.
 
 
 9
 To the extent that the court relied on the asserted lack of evidence that the first accident caused Jackson's injuries, the court erred. Dr. Goltz testified that the November 15 accident was the cause of a 20% disability in Jackson's neck. JA 17. He also testified that the November 15 accident was a "more significant" cause of the degenerative disc disease than her later, unrelated, accident. JA 26. Finally, he testified that, although the second accident made the symptoms of her disease appear much sooner than they otherwise would have, they would have appeared in any event even if the second accident had never occurred. Id. Dr. Goltz's later testimony that he was prepared to discharge Jackson from his care immediately before the second accident and that she was showing no symptoms of injury at that time, see, e.g., JA 28-29, does not contradict or undermine his earlier statements. That plaintiff was asymptomatic does not mean that she was uninjured; one may have a disease and yet show no current evidence of it. Indeed, that is precisely what we understand Dr. Goltz to have been saying was true in Jackson's case. Thus, we think the jury could reasonably have concluded that she suffered a medically demonstrable permanent impairment as a direct result of the November 15 accident.
 
 II
 
 10
 Whether the jury could find that the injury signifcantly affected her performance of her job is another question. The only evidence in the record on that question is Dr. Goltz's testimony that
 
 
 11
 ... I think [her injury] will give her difficulty in doing her job, but I think she can do her job. Where she would have a pain-free day without this injury, she would then have pain everyday [sic]. But I think she can do her job as a secretary and clerk, but she'll have difficulty. I think she will probably have to take--probably a week off every year, not for one week, but, I think, sometimes, especially with rapid weather changes, I think she'll have days in which she has quite a bit of pain and difficulty.
 
 
 12
 ... I think she can certainly do her job as secretary. I think, though, she'll have to limit some of her activities and watch herself. In other words, she can't lean over and type for eight hours. I think she's going to have to, every hour, take a break for ten or fifteen minutes, do the exercises, and do something else. So, she can certainly do her job, but with limitations, and she certainly will never be pain-free, but she'll be able to handle the job.
 
 
 13
 JA 18-19. Alone, this is simply not enough to go to the jury. Based upon the above testimony, the jury could have found that the accident would require her to take up to five sick days a year and, when typing, to take ten or fifteen minute breaks every hour. If the record reflected that the jury was also presented with evidence of the duties required by her job, we would know whether the jury could reasonably conclude that the injury significantly affected her activities. If, for example, her job were such that she was expected to be at work every working day regardless of whether she was ill, five days of sick leave might be significant. If she was frequently called upon to do several hours of uninterrupted typing on a rush schedule, ten or fifteen minute breaks might be significant as well. But Jackson has the burden of proving that the district court erred in directing a verdict for defendant, and there is no record evidence that either of these situations obtained. Nor can we simply assume that her duties were such that the relatively minor effects to which Dr. Goltz testified were significant. Someone nominally designated a "secretary" may be predominantly a typist, a receptionist, or a file clerk, and the injuries she suffered may or may not be significant depending on which of those roles she filled.
 
 
 14
 Without such evidence in the record, we cannot finally conclude that the district court erred in directing a verdict for defendant. We would normally affirm in such circumstances. We understand, however, that, although we have no transcript of her testimony, Jackson did in fact testify at trial. If her trial testimony matched her deposition testimony (which is in the record), she may well have presented sufficient evidence to the jury to permit it to conclude that her injuries significantly affected her daily and professional activities. Moreover, Cole does not obviously press as an alternative basis for affirmance the lack of evidence that her injuries significantly affected her particular job. We are therefore unwilling to affirm on that ground.
 
 III
 
 15
 Accordingly, we reverse the district court's grant of directed verdict. Having no basis in the record upon which to do so, we decline to rule on whether a reasonable juror could have found that Jackson's injuries significantly affected her ability to do her job, and we direct the district court to rule on that question before proceeding either to the entry of judgment for Cole or to a new trial.